**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH VARS and IT'S MY LICENSE, INC., Plaintiffs,** | : | |
| **v.** | : | **C.A. No. 04-052 T** |
| **LAURI CITRIN [sic], in her capacity as Chief Financial Officer of the City of Newport, and CITY OF NEWPORT, BOARD OF LICENSE COMMISSIONERS, RICHARD C. SARDELLA, Individually, and in his capacity as Chairman, JAMES BACCARI, JEANNE MARIE NAPOLITANO, RICHARD O'NEIL, STEPHEN C. WALUK, KATHERINE LEONARD, JOHN J. TRIFERO, Individually, and in their respective capacities as members, RHODE ISLAND DEPARTMENT OF BUSINESS REGULATION, MARILYN SHANNON MCCONAGHY, Individually and in her capacity as Director, and JEFFREY GREER, Individually and in his capacity as Hearing Officer, Defendants.** | : | |

**DEFENDANT'S MOTION TO DISMISS**

Now comes MARILYN SHANNON MCCONAGHY, in her official capacity as Director of the Department of Business Regulation, and moves this Court to dismiss Plaintiffs' Complaint, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A memorandum in support hereof is attached.

9

Respectfully Submitted,

State of Rhode Island,
By Its Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael P. Jolin, Bar No. 6389
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
Tel. (401) 274-4400
Fax (401) 222-3016

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 28th day of April, 2004, to those indicated below:

Marty C. Marran, Esq.
255 Main Street, Suite 411
Pawtucket, Rhode Island 02860

John Sheehan, Esq.
34 Bayside Avenue
Newport, Rhode Island 02840

Marc DeSisto, Esq.
211 Angell Street
Providence, Rhode Island 02903

**U.S. DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH VARS and IT'S MY LICENSE, INC., Plaintiffs,** | : | |
| **v.** | : | **C.A. No. 04-052 T** |
| **LAURI CITRIN [sic], in her capacity as Chief Financial Officer of the City of Newport, and CITY OF NEWPORT, BOARD OF LICENSE COMMISSIONERS, RICHARD C. SARDELLA, Individually, and in his capacity as Chairman, JAMES BACCARI, JEANNE MARIE NAPOLITANO, RICHARD O'NEIL, STEPHEN C. WALUK, KATHERINE LEONARD, JOHN J. TRIFERO, Individually, and in their respective capacities as members, RHODE ISLAND DEPARTMENT OF BUSINESS REGULATION, MARILYN SHANNON MCCONAGHY, Individually and in her capacity as Director, and JEFFREY GREER, Individually and in his capacity as Hearing Officer, Defendants.** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Marilyn Shannon McConaghy, in her official capacity as Director of the Department of Business Regulation ("DBR"), respectfully submits this memorandum of law in support of her motion to dismiss Count II of Plaintiffs' Amended Complaint.[1] The following two grounds warrant dismissal of

[1] Plaintiffs voluntarily dismissed Marilyn Shannon McConaghy, Individually, and Jeffrey Greer, Individually, and in his capacity as Hearing Officer, on March 18, 2004.

Plaintiffs' Amended Complaint.

First, the issue raised in Count II is moot because the decision of DBR's hearing officer affirming the revocation of Plaintiffs' liquor license was reversed by the Rhode Island Superior Court. The reversal is reflected in the hearing officer's subsequent, modified order imposing a suspension and a fine. The suspension ended on July 10, 2001. Thus, there is no actual case or controversy with this respect to DBR and dismissal under Rule 12(b)(1) is proper. See D.H.L. Assoc., Inc. v. O'Gorman, 199 F.3d 50, 54 (1st Cir. 1999).

Second, the doctrine of quasi-judicial immunity applies here because Plaintiffs' claim against DBR rests on the decision of a hearing officer acting in his judicial capacity. As such, Plaintiffs fail to state a case upon which relief may be granted under Rule 12(b)(6).

## II. STANDARD OF REVIEW

Under Rule 12(b)(1) and Rule 12(b)(6), all of the well-pleaded facts alleged in the complaint are treated as true and the plaintiff is entitled to all reasonable inferences in its favor. Id. at 47 (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir.), cert. denied, 515 U.S. 1144, (1995)); see also Hart v. Mazur, 903 F.Supp. 277, 279 (D.R.I. 1995). However, in ruling on a Rule 12(b)(1) motion, a court is not limited to the face of the pleadings. Palazzolo v. Ruggiano, 993 F.Supp. 45, 47 (D.R.I. 1998). A court may consider any evidence it deems necessary to settle the jurisdictional question. Id. (citations omitted). Once a defendant challenges a court's subject matter jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists. Id. at 46 (citing Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir.1992)).

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), dismissal is appropriate only when it is clear from the allegations in the complaint that the plaintiff will be

unable to prove facts sufficient to support the claim for relief. Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000).

## III. FACTS AND TRAVEL

According to the Amended Complaint, Boathouse Pub, Inc.,[2] owned a restaurant in the City of Newport, Rhode Island, for which it held a Class B Alcoholic Beverage Retailer's Permit (the "license"). Plaintiff Joseph Vars ("Vars") was the principal stockholder of the corporation. In 1999, Vars entered into some type of lease agreement with Jake & Ella's Corporation ("Jake & Ella's") for the restaurant and its equipment. Part of this agreement included the transfer of the license to Jake & Ella's but provided that The Boathouse Pub, Inc., retain a security interest in it. The City of Newport approved the transfer.

In 2000, the City of Newport cited Jake & Ella's for two separate incidents of drinking on the premises after-hours. The restaurant remained closed after the second incident and never reopened. Newport's Board of License Commissioners (the "board") held a hearing on the license on January 10, 2001. Jake & Ella's did not appear at the hearing but Joseph Vars and Boathouse Pub, Inc., did and were represented by counsel. At the hearing, the latter advised the board that Boathouse Pub, Inc., held a security interest in the license. The board voted to revoke the license regardless.

Plaintiffs appealed the decision to DBR. At the hearing, the hearing officer upheld the board's decision to revoke the license. On appeal to the Superior Court, the trial justice found that the revocation of the license was arbitrary and extreme so as to constitute a clear abuse of the hearing officer's discretion. He reversed the revocation of the license and remanded the

[2] According Plaintiffs' Amended Complaint, It's My License, Inc., is the successor corporation to Boathouse Pub, Inc.

matter back to the hearing officer so that a more appropriate penalty could be imposed.[3] On remand, the hearing officer modified his decision on October 16, 2002 by suspending the license for six months with time credited back to the date of the board's revocation (January 10, 2001) and imposing a $1,000 fine plus costs.[4]

On January 10, 2003 the Newport City Council reduced the number of Class B Alcoholic Beverage Retailer's Permits from 59 to 58. Plaintiffs allege that this action eliminated the license at issue.

## IV. ARGUMENT

### A. The Hearing Officer's Modified Order Renders Plaintiffs' Claim Moot.

DBR's hearing officer in this case issued an order pursuant to the instructions of the Rhode Island Superior Court that extinguished Plaintiffs' Count II in their Amended Complaint. "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." D.H.L. Assoc., Inc., 199 F.3d at 54 (1st Cir. 1999), quoting Powell v. McCormack, 395 U.S. 486, 496 (1969). In other words, litigants who seek to invoke the power of the courts must allege an actual case or controversy. O'Shea v. Littleton, 414 U.S. 488, 493 (1974).

In this case, the hearing officer modified his order of revocation of the license at issue when directed to do so by the Superior Court. Pursuant to the court's instruction for a more appropriate sanction, the hearing officer determined that a six-month suspension of the license would serve the interests of the City of Newport and the other parties. Because the restaurant had been closed for over a year and a half, the hearing officer decided to have the suspension start

[3] See Order of Procaccini, J., in Jake and Ella's, Inc., v. Department of Business Regulation, NC 01-461, attached as Exhibit A.
[4] See Order of Jeffrey J. Greer, dated October 16, 2002, attached as Exhibit B.

from date of the restaurant's closure in January 2001. Thus, the suspension was completed during the time the restaurant had been closed. The effect of this action gave Plaintiffs an opportunity to commence proceedings with Newport's Board of Liquor Commissioners to transfer the license back to them. As a result, there is no "live" controversy between DBR and Plaintiffs. These events have "wiped the slate clean...so that the court's opinion would be purely advisory." Rhode Island Association of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 34 (1st Cir. 1999). Any issue that remains is solely between Plaintiffs and the City of Newport.

**B. The Doctrine of Quasi-Judicial Immunity Bars Plaintiffs' Amended Complaint.**

Count II of Plaintiffs' Amended Complaint arises from the decision of a hearing officer acting in his judicial capacity. As a result, quasi-judicial immunity precludes the instant action against the Department of Business Regulation.

Absolute immunity is generally accorded to judges functioning in their official capacities. Stump v. Sparkman, 435 U.S. 349, 364 (1978) (holding that state circuit judge is immune from suit for all actions within his jurisdiction). This immunity reflects the long-standing "general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Bradley v. Fisher, 13 Wall. 335, 347 (1871).[5] In the years since Bradley was decided, the United States Supreme Court has not seen fit to diminish the traditional common-law protections extended to the judicial process. See e.g., Pierson, 386 U.S. at 553 (observing that few doctrines are more solidly established at common law than the immunity of judges for acts committed within their judicial jurisdiction). On the

[5] This doctrine of judicial immunity finds its parallel in settled decisions of the Rhode Island Supreme Court. See e.g., The Estate of Paul K. Sherman v. Almeida, 747 A.2d 470, 474-75 (R.I. 2000); see generally Calhoun v. City of Providence 390 A.2d 350 (R.I. 1978).

contrary, the Court has extended the protection of absolute immunity to executive branch personnel who preside over administrative hearings. See Butz v. Economou, 438 U.S. 478, 513-514 (1978). Such immunity assures the independent functioning of executive officials acting in a quasi-judicial capacity and ensures that they can exercise their adjudicative discretion without fear of intimidation or harassment. Id. at 515-17.

In Butz, the U.S. Supreme Court observed that the "conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court." Butz, 438 U.S. at 513 (citation omitted). These proceedings often result in post-adjudication disappointment and associated venting by the losing party similar to those that follow adverse judicial determinations. Id. The Court also observed that federal administrative law provides many of the same safeguards that are available in the judicial process, such as the adversarial nature of the proceedings, the insulation of the trier of fact from political influence, and the requirement that each party have the opportunity to present oral and documentary evidence. Id. (citations omitted). Moreover, the Supreme Court noted that both the role and the powers of a modern federal hearing examiner – to rule on motions, issue subpoenas, regulate the course of the proceeding, and make decisions via findings of fact and conclusions of law – are functionally comparable to those of a judge. Id. (citation omitted). For those reasons, the Supreme Court ultimately held that federal hearing examiners performing agency adjudicatory functions are entitled to absolute immunity for their judicial acts. Id. at 514.[6]

As a result of these considerations, a three-part test was established for determining

[6] The Rhode Island Supreme Court has adopted the doctrine of quasi-judicial immunity, recognizing that "agents of the state who performed a quasi-judicial function were entitled to immunity both for themselves and for the sovereign entity that employed them." Mall at Coventry Joint Venture v. McLeod, 721 A.2d 865, 869 (R.I. 1998) (citing Butz, supra); see also Psilopoulos v. State, 636 A.2d 727 (R.I. 1994).

whether an administrative official's actions fall within the protection of quasi-judicial immunity. In the case at bar, quasi-judicial immunity protects the hearing officer and his employer, the Department of Business Regulation, if: (1) the hearing officer performed a traditional adjudicatory function when he decided Plaintiffs' appeal; (2) the hearing officer decides cases of sufficient controversy that, in the absence of quasi-judicial immunity, would subject him and DBR to litigation for damages by disappointed parties; and (3) sufficient safeguards exist within the regulatory framework to protect constitutional rights. Butz, 438 U.S. at 510-13.

As a general proposition, the actions taken by hearing officers in deciding liquor license appeals are adjudicatory in nature. By its very nature, the system for the oversight of these licenses creates a tension between licensees and the local liquor board when the latter revokes a license. When a local board revokes a license, the law provides licensees with a right of appeal before a hearing officer of the Department of Business Regulation. See R.I. Gen. Laws § 3-7-21. These hearings are governed by the Rhode Island Administrative Procedures Act ("APA"), R.I. Gen. Laws § 42-35-1, et seq.

The hearing officer presides over the hearing and conducts it using the rules of evidence whenever possible. See R.I. Gen. Laws § 42-35-10(a). All parties are given the opportunity to respond and present evidence and argument on all issues involved. See R.I. Gen. Laws § 42-35-9(c). The resolution of these matters involves weighing evidence, considering legal arguments, making factual and legal determinations, and issuing a written decision. See R.I. Gen. Laws § 42-35-12. Moreover, under the Liquor Control Administration Act, hearing officers may compel the production of documents, records, or other legal evidence that may be necessary for their determination of the question at hand. See R.I. Gen. Laws § 3-2-5(c). They may also subpoena witnesses and compel testimony. See R.I. Gen. Laws § 3-2-5(b).

Here, the hearing officer's decision to affirm the local board's revocation of the license and then modify his decision per an order of the Superior Court were made pursuant to his adjudicatory responsibilities. As is customary in an adjudication, Plaintiffs gave testimony, submitted evidence, and made arguments to support their position. The hearing officer took the parties' submissions under advisement and issued a decision. When the matter was remanded back to the hearing officer by the Superior Court, he followed the court's order and modified his previous decision. None of these actions could be construed as occurring outside of his quasi-judicial duties. Thus, the first prong of Butz is met.

With regard to the second prong, it is clear that adjudicating the appeals of licensees can generate sufficient controversy that may subject hearing officers and DBR to litigation. Without question, the act of denying an appeal is likely to generate disappointment, frustration, and even anger toward the hearing officer. Indeed, a negative decision may stimulate a desire to take collateral action against him and DBR. Such an action may cause the hearing officer to hesitate to perform his function in an objective manner if he knows that such a course may subject him to personal liability. He must be able to perform his functions without the threat of harassment or intimidation from either the local liquor boards or the licensees, such as Plaintiffs, who avail themselves of the system. The threat of personal liability may, in a very real sense, color a hearing officer's judgment and weaken his ability to make difficult or unpopular decisions. Thus, the second prong of Butz is also met.

In examining the third prong, there are sufficient safeguards within the set of statutes and rules governing the liquor license appeal process that "enhance the reliability of information and the impartiality of the decision-making process." Butz, 438 U.S. at 512. The position of hearing officer functions under the Rhode Island Administrative Procedures Act. As mentioned above,

the APA contains procedural rules that govern State agency activity. The APA sets forth procedures to be used in all hearings, including proper notice, assurances of full disclosure of relevant facts and issues, and opportunities to present evidence and argument. See R.I. Gen. Laws § 42-35-9. All orders and decisions must be in writing and include findings of fact and statements of available procedures. See R.I. Gen. Laws § 42-35-12 and -15.

In addition, the Liquor Control Administration Act provides for the right to an appeal for licensees who are aggrieved by their local board. See R.I. Gen. Laws § 3-7-21. If still not satisfied, licensees can take an appeal of the hearing officer's decision to the Superior Court, as was done here. See R.I. Gen. Laws § 42-35-15. The Superior Court may overturn or modify the decision made below if it violates constitutional or statutory provisions; is in excess of the statutory authority of the agency; is made upon unlawful procedure; or is affected by other error or law. See R.I. Gen. Laws § 42-35-15(g). Clearly, these procedures provide the necessary safeguards for licensees that obviate the need for private damages actions as a means of controlling unconstitutional conduct. The present case is an example of how these safeguards work Plaintiffs obtained the relief sought in the Superior Court by having the hearing officer's decision overturned and modified. The third prong of Butz, therefore, is also met.

Like the judicial process and the federal administrative agency process, the Department of Business Regulation and its hearing officers must be able to exercise independent judgment based on the evidence set forth by the parties and be free from pressures of the parties. To hold otherwise would have a chilling effect on the statutorily authorized appeal process for licensees who have their licenses revoked. Accordingly, the hearing officer and DBR must enjoy immunity from collateral attacks such as presented here in the instant action.

## V. CONCLUSION

For the foregoing reasons, Defendant Marilyn Shannon McConaghy, in her capacity as Director of the Department of Business Regulation, respectfully requests that this Honorable Court grant her Motion to Dismiss.

Respectfully Submitted,

MARILYN SHANNON McCONAGHY,
in her capacity as Director of the
Department of Business Regulation,

By Her Attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Michael P. John, Bar No. 6389
Special Assistant Attorney General
150 South Main Street
Providence, Rhode Island 02903
Tel. (401) 274-4400
Fax (401) 222-3016

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that a copy of the foregoing document was mailed, postage prepaid, on this 08th day of April, 2004, to those indicated below:

Marty C. Marran, Esq.
255 Main Street, Suite 411
Pawtucket, Rhode Island 02860

Marc DeSisto, Esq.
211 Angell Street
Providence, Rhode Island 02903

John Sheehan, Esq.
34 Bayside Avenue
Newport, Rhode Island 02840

# EXHIBIT A

EXHIBIT 2

STATE OF RHODE ISLAND
NEWPORT, SC.

SUPERIOR COURT

JAKE & ELLA'S, CORP.,
JOSEPH VARS, AMY VARS, and
AMY AND JOE'S RESTAURANT, INC.,
as successor in interest to BOATHOUSE
PUB, INC.

v.

A.A. No. NC 01-461

RHODE ISLAND DEPARTMENT OF
BUSINESS REGULATION, MARILYN
SHANNON MCCONAGHY, in her
capacity as Director of the Rhode Island
Department of Business Regulation, ET ALS.

## ORDER

This matter came on for hearing, Justice Procaccini, presiding, on the merits of the petitioner's appeal from the decision of the Department of Business Regulation to revoke the petitioner's Class B Alcoholic Beverage Retailer's Permit. Upon the evidence, the parties' memoranda, the transcript of the agency hearing and the decision of the DBR hearing officer, after hearing and upon due consideration it is hereby:

**ORDERED, ADJUDGED and DECREED**

1. While the penalty of "revocation" is permitted by the applicable statutes, the application of that penalty in these presents was so arbitrary and extreme so as to ~~constitute a clear abuse of the hearing officer's discretion and an error of law.~~

2. The co-petitioners who maintain an equitable interest in the license are not entitled to consideration of their interests in the context of a license revocation hearing.

True Copy Attest
Charles H. Hollis
Office of Clerk of Superior Court
Newport County
Newport, Rhode Island

3. The matter is remanded to the Department of Business Regulation for the hearing officer's decision as to an appropriate penalty consistent with this Court's findings and decision of April 23, 2002.

ENTER: 4-30-02

PER ORDER: Anthony Piccirilli Deputy Clerk I

Presented by:

Marty C. Marran Reg. No. 2855
255 Main Street, Suite 309
Pawtucket, Rhode Island 02860
(401) 729-4700

April 30, 2002

**CERTIFICATION**

I certify that on April 30, 2002 I did forward a true and correct copy of the above to Joseph J. Nicholson, Jr., Esquire, Newport City Hall, 43 Broadway Newport, Rhode Island 02840 by hand delivery.



True Copy Attest
Charles H. Hollis
Office of Clerk of Superior Cour
Newport County
Newport, Rhode Island

# EXHIBIT B

EXHIBIT 3

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS
DEPARTMENT OF BUSINESS REGULATION

| | | |
|---|---|---|
| Jake and Ella's, Inc. | : | |
| | : | |
| v. | : | LCA NE-01-01 |
| | : | |
| City of Newport, Board of License Commissioners | : | |

ORDER

On April 22, 2002 the Departmental decision in the above-captioned matter affirming the revocation of licensure by the City of Newport ("City") was reversed on appeal in Superior Court. The court remanded the matter to the Department for further determination of an appropriate sanction. On September 12 and 24, 2002 hearings were held on the issue of a new sanction. The licensee also filed a memorandum on the subject. At the remand hearings the City argued that a one thousand dollar ($1,000) fine plus reimbursement of City costs of two hundred fifty nine dollars and thirty-one cents ($259.31) was an acceptable sanction. The costs derive from police officer overtime for officers to testify at the original hearing. After some debate, the licensee stated that the sanction would be acceptable if it would end the matter.

At this point in this case a balancing of interests serves the best justice. The undersigned has considered the sanction recommended by the City and agreed to by the licensee yet believes some term of suspension must be put on record for the conduct involved, in addition to the fine and cost assessments. The licensee's conduct demonstrated gross irresponsibility and disrespect for the law and liquor licensing officials, clearly violative of R.I.Gen.Laws §§3-7-7, 3-5-23 and various municipal ordinances. The conduct was of a severe nature, if not of a severity justifying revocation. Discovered by law enforcement officers committing the same after-hours offense he had committed three months earlier, the licensee, rather than show remorse, refused to cooperate with basic police requests and even attempted to assault an

officer. Furthermore, the licensee's admitted state of intoxication at the time of the incident while on the licensed premises must be considered an aggravating circumstance and a factor contributing to the inappropriate behavior. For such conduct the undersigned levies a six (6) month period of suspension in addition to the $1,000 fine and $259.31 in costs recommended by the City and agreed to by the licensee. Such conduct cannot be tolerated and should be addressed with a significant sanction. Furthermore, the City should not have to pay the costs for police officers to testify at a hearing about licensee violations that undoubtedly occurred.

Nonetheless, returning to the balancing of interests referred to above, it is indisputable that the licensee has suffered financially during the pendency of this litigation for a variety of reasons, in-part by being closed at least since January of 2001. While it is also undisputed that a percentage of this misfortune is of the licensee's own doing, it is undeniable that the licensee would benefit greatly by being able to transfer the license at this point in time. Therefore, the undersigned hereby credits the time the licensed premises was closed toward the period of suspension, meaning the six month suspension has been served.

The penalty of $1,000 plus $259.31 in costs remains imposed upon the licensee, providing a sanction with some sting on the remand. Upon payment of these sums to the City, this matter shall be dismissed.

Dated: 10/16/02

Jeffrey J. Greer
Hearing Officer

I hereby adopt/~~reject~~ the decision of the Hearing Officer.

Dated: 10/18/02

Marilyn Shannon McConaghy
Director

THIS DECISION CONSTITUTES A FINAL DECISION OF THE DEPARTMENT OF BUSINESS REGULATION PURSUANT TO RHODE ISLAND GENERAL LAWS TITLE 42, CHAPTER 35. AS SUCH, THIS DECISION MAY BE APPEALED TO THE SUPERIOR COURT WITHIN THIRTY DAYS OF THE DATE OF THIS DECISION. SUCH APPEAL, IF TAKEN, MAY BE COMPLETED BY FILING A PETITION FOR REVIEW IN SAID COURT.

## CERTIFICATION

I hereby certify that on the 21st day of October, 2002, a copy of the within decision was sent by certified and first class mail, postage prepaid, to the following:

Christopher Beehan, Esq.
Acting City Solicitor
Newport City Hall
43 Broadway
Newport, RI 02840

Marty C. Marran, Esq.
255 Main Street, Suite 309
Pawtucket, RI 02860

[signature]