UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JOSEPH VARS and
IT'S MY LICENSE, INC.,

*Plaintiffs,*

vs.

C.A. No. 04-052 T

LAURA CITRIN {sic}, in her capacity as Chief Financial Officer of the City of Newport, and CITY OF NEWPORT BOARD OF LICENSE COMMISSIONERS, RICHARD C. SARDELLA, Individually and in his capacity as Chairman, JAMES BACCARI, JEANNE MARIE NAPOLITANO, RICHARD O'NEIL, STEPHEN C. WALUK, KATHERINE LEONARD, JOHN J. TRIFERO, Individually and in their respective capacities as members, RHODE ISLAND DEPARTMENT OF BUSINESS REGULATINO, MARILYN SHANNON MCCONAGHY, Individually and in her capacity as Director, and JEFFREY GREER, Individually and in his capacity as Hearing Officer,

*Defendants.*

**PARTIES RULE 12.1 AGREED STATEMENT OF UNDISPUTED FACTS**

1. Joseph and Amy Vars were the joint owners of the property and building located at 636 Thames Street in the City of Newport. There is a restaurant/bar located on the ground floor, and there are two residential units above.

2. Amy Vars and the parties' son Michael were also the officers, directors and stockholders of Boathouse Pub, Inc., which corporation held the Class B Alcoholic Beverage

Retailer's Permit under consideration in this action from 1972 to 1999. In this corporate capacity, the Vars ran a successful and trouble-free restaurant/bar operation for that twenty-seven (27) year period.

3. On April 1, 1999 the Vars entered into an agreement with Jake & Ella's Corp. for the purchase-sale of the business and equipment, and it transferred the Class B License to Jake & Ella's with the approval of the Newport Board of License Commissioners.

4. Joseph and Amy Vars also then leased the business premises at 636 Thames Street to Jake & Ellas Corp., including the two (2) apartments located over the restaurant. At the time of the transfer, the Vars took back a Pledge and Security Agreement (Exhibit 1) and an "Assignment Of All Rights In And To The Retailer's Class BV Liquor License," (Exhibit 2), as security on the unpaid balance owed for the purchase of the business and equipment and on the license itself. A UCC lien was also filed with the Secretary of State on April 20, 1999 which included in its terms "a Retailer's Class B-V Liquor License." (Exhibit 3)

5. The power of attorney would allow the Vars/Boathouse Pub, Inc. to apply to the Newport Board of License Commissioners for the transfer of the Class B liquor license back to themselves, or to their nominee, in the event of a default by Jake & Ella's, either on the purchase-sale agreement or on the lease.

6. The restaurant began operation sometime in the mid-1999. By mid-June, 2000, Jake and Ella's was in serious default both on its obligations under the purchase-sale agreement and on its rent. This led the Vars to institute eviction proceedings in the District Court. The parties reached an *interim* agreement in that action that allowed Jake and Ella's to remain in

possession of the premises. Jake & Ella's continued to operate, but subsequently defaulted on that agreement as well.

7. On August 15, 2000, Jake & Ella's was cited by the Newport Board of License Commissioners for having allowed after-hours drinking by employees on the premises. After a public hearing, a $500 fine was imposed, and no appeal was taken.

8. With the sale to Jake & Ella's, Boathouse Pub and Restaurant, Inc., allowed it's corporate charter to lapse, and it was revoked by the Secretary of State on November 20, 2000. Even though still doing business, Jake & Ella's Corp. also allowed it's charter to lapse, and it was revoked by the Secretary of State on that same day for failure to file its annual statement for that year. The charters have never been reinstated.

9. On the morning of December 1, 2000 at approximately 5:15 AM, Officer Joseph Carroll of the Newport Police Department was on patrol, and was dispatched to the area of Jake and Ella's to investigate a complaint of loud music coming from the apartment above the establishment.

10. When he arrived he looked through the front window and clearly observed three (3) individuals sitting inside Jake & Ella's at the bar. He waited for backup, and then sought and gained entry to the restaurant/bar area.

11. Once inside he determined that one of these individuals, Golden, was an employee. The other two (2) men were musicians who had worked in the club that evening. There were cold draft beers on the bar, leading Officer Carroll reasonably to conclude that these men had been drinking on the premises after-hours.

12. Officer Carroll heard a noise and went into the kitchen area. There he found a man standing near the open kitchen door, who was subsequently identified as John Peterson, one of the officers and stockholders of Jake and Ella's.

13. According to Officer Carroll, Peterson had one shoe on, and he was in an obvious state of intoxication. Officer Carroll asked Peterson to step into the main bar area. Peterson refused, and after some argument he apparently made a fumbled attempt to strike Officer Carroll.

14. Peterson was easily subdued, and was taken into custody. He refused to identify himself to the officers, and was later charged in the Second Division District Court with disorderly conduct. He pleaded *nolo contendere*, and the case was filed for one year.

15. The employee, Golden, and the two musicians cooperated fully with Officer Carroll; there is no evidence that any of them was intoxicated, and none was arrested.

16. Cameron Colyer, an officer and co-director of Jake & Ella's was summoned by the police and came immediately to the restaurant from his home. He identified John Peterson to Officer Carroll, and then later secured the premises.

17. Jake & Ella's was cited by the Board of License Commissioners as a result of this incident. After notice and public hearing on January 10, 2001, the local Board of License Commissioners voted to revoke Jake & Ella's Class B License.

18. After December 1, 2000 Jake & Ella's, in fact, closed its doors and ceased doing business. Joseph and Amy Vars took immediate possession of the premises, and formed a new corporation, "Amy & Joe's Restaurant, Inc." as a successor to their former corporation, "Boathouse Pub, Inc."

19. Application was also made by "Amy & Joe's Restaurant" on January 11, 2001 for a victualing house license, but the City Clerk refused to process the application. After a petition for writ of *mandamus* was filed; this application was finally processed and was considered by the Newport City Counsel but it was not approved. Unable to operate any business, the Vars' debt on the building's mortgage quickly mounted.

20. On January 10, 2001 the City of Newport Board of License Commissioners conducted a license revocation hearing after due notice to Jake & Ella's. The principals of that corporation did not attend, but the Vars' attorney, Edward Manning, Jr., appeared on behalf of Jake & Ella's and argued. A copy of the transcript of that hearing is attached as Exhibit 4.

21. After hearing, the Board voted to revoke the Class B license. The principals of Jake & Ella's took timely appeal to the Department of Business Regulation.

22. Hearing *de novo* was had in Newport on March 8, 2001 before the hearing officer, Jeffrey Greer. The Vars were represented by counsel, and Jake & Ella's was separately represented by its own counsel, Terrence Houlihan.

23. After hearing, Mr. Greer took the matter under advisement, and on September 24, 2001 he rendered his written decision affirming the revocation of the Class B License. The defendant Director of the Department of Business Regulation endorsed Mr. Greer's decision that same day. Jake & Ella's, the Vars and "Amy & Joe's Restaurant" joined in a timely appeal to the Superior Court pursuant to General Laws sec. 42-35-1, *et seq.*, the Administrative Procedures Act.

24. The parties filed memoranda and after hearing the Honorable Superior Court, on April 23, 2002 reversed the order of revocation on the grounds that the penalty was arbitary and capricious. The Decision and Order are attached hereto as (Exhibits 7 and 8).

25. During the pendency of this appeal, the license holder "Jake & Ella's" and its two principals, Mr. Collyer and Mr. Peterson, settled their disputes with the Vars. On August 29, 2001, with the execution of a certain "Mutual Release And Settlement Agreement" (Exhibit 5) and "Pledge Agreement and Power of Attorney" (Exhibit 6) encompassing such issues as damage to the premises, back rent, and above all the return of the license. Jake & Ella's executed these documents both in the corporate name and individually by it's two officers, directors and stockholders, John Peterson and Cameron Colyer.

26. The matter was remanded to the hearing officer for determination of an appropriate penalty. Hearings were had on September 12 and September 24, 2002 and additional memoranda were filed.

27. The hearing officer rendered his decision to fine Jake & Ella's $1,000 and costs, and suspending the license retroactively for six (6) months. That decision was endorsed on October 24, 2002, by the Director, Ms. McConaghy. No appeal was taken therefrom. (Exhibit 9)

28. Vars did not meet the traditional November 15 deadline for the filing of applications to renew, done *en masse* each year by Newport as in all other cities and towns. On January 8, 2003 the Newport City Council convened and enacted an ordinance reducing the total number of Class B Permits available from fifty-nine (59) to fifty-eight (58).

29. On December 20, 2002 the Newport City Clerk forwarded applications for renewal of the class B-V Liquor License with the attached letter. (Exhibit 10)

30. Vars counsel was aware of the pendency of the City Council Meeting scheduled for January 8, 2003. On January 7, 2003 he faxed a correspondence to the City Clerk, (Exhibit 11) asking that it be read to the council the following evening. For an unknown reason this correspondence was not read to the City Council during the hearing.

31. On January 8, 2003 the Newport City Council passed the ordinance reducing the total number of Class B permits available from 59 to 58. At that Council meeting the defendant SARDELLA announced that one license holder had failed to file timely application to renew its license and that by this ordinance that license would be now "retired." See attached transcript of the proceedings. (Exhibit 12)

32. The parties taken issue as to the legal effect, if any of the City Council's action on the validity of the particular license that is the subject of this action and will argue their points in their respective memoranda.

C.A. No. 04-052 T

Defendants,
Laura Sitrin, in her capacity as
Finance Director of the City of Newport, City of
Newport Board of License Commissioners,
Richard C. Sardella, Individually and in his
capacity as Chairman, James Baccari, Jeanne
Marie Napolitano, Richard O'Neil, Stephen C.
Waluk, Katherine Leonard, John J. Trifero,
Individually and in their respective capacities as
members

By their Attorney,

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

Plaintiffs,
Joseph Vars and It's My License, Inc.,

Marty C. Marran, Esq. (#2855)
c/o RI Disability Center
339 Eddy Street
Providence, RI 02903
(401) 831-3150
(401) 274-5568

FILED