**THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH VARS and IT'S MY LICENSE, INC.** | : | |
| **Plaintiffs** | : | |
| **V.** | : | **C.A. No. 04-52 T** |
| | : | |
| **LAURA CITRIN, in her capacity as Chief** | : | |
| **Financial Officer of the City of Newport, and** | : | |
| **CITY OF NEWPORT, BOARD** | : | |
| **OF LICENSE COMMISSIONERS,** | : | |
| **RICHARD C. SARDELLA, Individually,** | : | |
| **and in his capacity as Chairman,** | : | |
| **JAMES BACCARI, JEANNE MARIE** | : | |
| **NAPOLITANO, RICHARD O'NEIL,** | : | |
| **STEPHEN C. WALUK, KATHERINE** | : | |
| **LEONARD, JOHN J. TRIFERO,** | : | |
| **Individually, and in their respective** | : | |
| **capacities as members, RHODE ISLAND** | : | |
| **DEPARTMENT OF BUSINESS** | : | |
| **REGULATION, MARILYN** | : | |
| **SHANNON MCCONAGHY, Individually** | : | |
| **and in her capacity as Director, and** | : | |
| **JEFFREY GREER, Individually and in** | : | |
| **his capacity as Hearing Officer** | : | |
| **Defendants** | : | |

## PLAINTIFF'S OBJECTION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come the plaintiffs in the above entitled action and object to defendants' motion for summary judgment.

As grounds therefore, plaintiffs' memorandum is attached hereto and made a part hereof.

Plaintiffs,
By their Attorneys,

Marty C. Marran Reg. No. 2855
7 Tanglewood Court, Apt. 10
West Warwick, RI 02893
(401) 826-0847

Edward G. Lawson, #0517
260 Lonsdale Avenue
Pawtucket, RI 02860
401 725 1810
401 725 2244 fax

**Certification**

I certify that I mailed a copy of the above motion and attached memorandum to Mark DeSisto, Esq., 211 Angell Street, P.O. Box 2563, Providence, RI 02906 and Joseph Nicholson, Esq., Newport City Hall, 936 Broadway, Newport, RI 02840 on the 16th day of September, 2005.

**THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH VARS and IT'S MY LICENSE, INC.** | : | |
| **Plaintiffs** | : | |
| **V.** | : | **C.A. No. 04-52 T** |
| | : | |
| **LAURA CITRIN, in her capacity as Chief** | : | |
| **Financial Officer of the City of Newport, and** | : | |
| **CITY OF NEWPORT, BOARD** | : | |
| **OF LICENSE COMMISSIONERS,** | : | |
| **RICHARD C. SARDELLA, Individually,** | : | |
| **and in his capacity as Chairman,** | : | |
| **JAMES BACCARI, JEANNE MARIE** | : | |
| **NAPOLITANO, RICHARD O'NEIL,** | : | |
| **STEPHEN C. WALUK, KATHERINE** | : | |
| **LEONARD, JOHN J. TRIFERO,** | : | |
| **Individually, and in their respective** | : | |
| **capacities as members, RHODE ISLAND** | : | |
| **DEPARTMENT OF BUSINESS** | : | |
| **REGULATION, MARILYN** | : | |
| **SHANNON MCCONAGHY, Individually** | : | |
| **and in her capacity as Director, and** | : | |
| **JEFFREY GREER, Individually and in** | : | |
| **his capacity as Hearing Officer** | : | |
| **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**Marty C. Marran Reg. No. 2855**
**7 Tanglewood Ct. Apt 10**
**West Warwick, RI 02893**
**(401) 826-0847 Tel.**

**Edward G. Lawson Reg. No 0517**
**260 Lonsdale Avenue**
**Pawtucket, RI 02860**
**(401) 725-1810 Tel.**
**(401) 725-2244 Fax**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **JOSEPH VARS and IT'S MY LICENSE, INC.** | : | |
| **Plaintiffs** | : | |
| **V.** | : | **C.A. No. 04-52 T** |
| | : | |
| | : | |
| **LAURA CITRIN, in her capacity as Chief Financial Officer of the City of Newport, and CITY OF NEWPORT, BOARD OF LICENSE COMMISSIONERS, RICHARD C. SARDELLA, Individually, and in his capacity as Chairman, JAMES BACCARI, JEANNE MARIE NAPOLITANO, RICHARD O'NEIL, STEPHEN C. WALUK, KATHERINE LEONARD, JOHN J. TRIFERO, Individually, and in their respective capacities as members, RHODE ISLAND DEPARTMENT OF BUSINESS REGULATION, MARILYN SHANNON MCCONAGHY, Individually and in her capacity as Director, and JEFFREY GREER, Individually and in his capacity as Hearing Officer** | : | |
| **Defendants** | : | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## I. DESCRIPTION OF MOTION

This matter is before the Court on the parties' cross-motions for partial summary judgment. The Defendants argue that the Plaintiffs' security interest in the liquor license in question is not protected by the substantive due process clause of the United States Constitution, that the license commissioners for the City of Newport, individually and in their respective capacities, as well as the City of Newport itself are entitled to qualified immunity, and that the

subsequent action of the City of Newport by it's City Council to "retire" this license does not amount to a taking of the Plaintiffs' property interest. Plaintiffs assert that their interest is, indeed, a "property interest" and that they are entitled to procedural and substantive due process clauses of the U. S. Constitution, that both the actions of the Board in revoking that license and those of the City council in "retiring" that license were done in violation of the 5th and 14th Amendments to the Constitution.

The Plaintiffs offer the following in support of their opposition to the Defendants' Motion and in support of their own motion for summary judgment.

## II. FACTS

Plaintiffs are the successors-in-interest to the former Boathouse Restaurant and Pub, Inc., a Rhode Island business corporation with its principal place of business in the City of Newport. The Plainitffs' sold their business in 1999 and caused the Class B Alcoholic Beverage Retailer's Permit (hereinafter referred to as the "license") to be transferred to Jake and Ella's Corp. Plaintiffs (hereinafter referred to as "Vars,") retained a secured interest in the license and business equipment and recorded same appropriately with the Secretary of State in accordance with the UCC.

In August, 2000, Jake and Ella's Corp. was summoned before the Board of License Commissioners to answer a complaint about after-hours drinking. The hearing resulted in the imposition of a $500.00 fine.

On December 1, 2000, Jake and Ella's was alleged to have committed a second similar violation. A hearing on January 8, 2001 resulted in a decision by the City of Newport board of license commissioners to revoke the license. Vars sent their attorney to the hearing to protect

both their own interests and, pursuant to a Power of Attorney, those of Jake and Ella's. Both Jake and Ella's and Vars brought appeals to the Department of Business Regulation.

In addition, Vars sought an application for a separate Victualing House License in order to operate their restaurant business pending their appeal. The clerk for the City of Newport refused to issue the requested application. Thereupon Vars' applied to the RI Superior Court for a Writ of Mandamus. The City relented and sent the application to Vars which, however, was summarily denied by the Newport City Council without explanation.

At this point, financially destitute,Vars took no further action on the application for the victualling license and decamped to their present home in Florida.

The hearing officer for the RI Department of Business Regulation ultimately sustained the order of revocation, and the parties appealed to the Rhode Island Superior Court. The Court rejected Vars' claim of independent standing, but reversed the decision to revoke the license on the grounds that the revocation was, as a matter of law, arbitrary and capricious. The trial justice remanded the matter to the Department of Business Regulation which altered the penalty to a fine and six-month retroactive suspension. The Department's final decision was entered on October 29, 2002. In December, 2002,Vars sought and received applications for the transfer of Jake and Ella's interest from the Newport City Clerk who advised that Vars would, *inter alia*, be required to pay a separate advertising fee since they had not filed their request in time for the *en masse* hearing for the renewal of all licenses earlier that month.

On January 7, 2003 Vars contacted the Newport City Clerk with a letter from their counsel outlining their schedule for seeking renewal, necessitated by the need to obtain tax clearance from the Rhode Island Division of Taxation. Nevertheless, on January 8, 2003 the Newport City Council, citing the failure of "one licensee" to seek renewal, passed an ordinance

reducing the total number of Class B licenses available from 59 to 58 - effectively revoking or "retiring" Vars' interest in their license. Whereupon, Vars brought this action in the Rhode Island Superior Court, and it was subsequently removed by the defendants to this Honorable Court. The matter is now before this Court on the parties' cross-petitions for Partial Summary Judgment.

## II. ISSUES

**A. Is the Plaintiffs' security interest in the Class B Alcoholic Retailer's Permit protected by the Procedural and Substantive Due Process clause of the U.S. Constitution?**

**B. Did the Defendants violate the Plaintiffs' right to Due Process by failing to consider the effect revocation of this license would have on their security interest therein?**

**C. Are the Commissioners on the Newport Board of Licensing entitled to quasi-judicial immunity, and what immunity, if any does the municipality itself have against these claims?**

**D. Did the "retirement" of this license upon its supposed expiration constitute an unlawful taking of the Plaintiffs' property. Is it a separate and distinct violation of their rights to Procedural and Substantive Due Process, and does it constitute and unlawful taking of their property without just compensation?**

## IV. POINTS AND AUTHORITIES

**Standard of Review**. The Defendants have accurately recited the standard for Summary Judgment. "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ. P. 56 (c).

* * * (T)he Court must view the facts in the record and all inferences therefrom in the light most favorable to the non-moving party. See *Springfield Terminal Ry. Co. v. Canadian Pacific., Ltd., 133 F3d 103, 106 (!st Cir. 1997)* Where the facts support plausible yet conflicting inferences on a central issue in the case, the Court may not choose between such inferences on a motion for summary judgment. * * * Summary judgment is available when there is no dispute as to any material fact and only questions of law remain. *See Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996)* The moving party bears the burden of showing that no evidence exists to support the non-moving party's position. See *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, (1986): Rochester Ford Sales, Inc. v. Ford Motor Co., 287 F. 2d 32, 38 (1st Cir. 2002)*

*Forest v. Pawtucket Police Dept. 290 F. Supp 215, 224 (D.RI 2003)*

The motion will lie appropriately "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)

**A. The Plaintiffs' security interest in this liquor license is "property" protected by the Fourteenth Amendment. The Plaintiffs were entitled both to substantive and procedural due process on any matter that might affect the continued viability of this license.**

"Section 1983 'is not itself a source of substantive rights' but merely provides 'a method for vindicating federal rights elsewhere conferred' *Baker v. Macollan, 443 U.S. 137, 144, n.3, 99 S.ct.2689, 2694 n.3, 61 L.Ed2d 433 (1979).* The first step in any such claim is to identify the specific constitutional right infringed. (cites omitted) ***'" *Albright v. Oliver 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed2d 114 (1994)* It cannot be gainsaid that the right to "due process," to "property" and to the protections afforded citizens against the taking of property by government without just compensation are fundamental principals embodied in Fifth Amendment, and applied to the states by right of the Fourteenth Amendment to the Constitution. However, it is also acknowledged that "property rights" are created by state law. The following quote from *Roy v. City of Augusta, Maine, et al. 712 F2d 1517 (1st Cir. 1983*) is instructive:

> There is no question that defendants acted under color of state law (a)nd Roy's interest in renewing the license may have been "property" within the meaning of the fourteenth amendment. Property rights, although protected by the Constitution, are created by state law. See Bishop v. Wood, 426 U.S.341, 96 S.Ct. 2047, 48 L.Ed.2d 684 (1976) While the state licensing statute in question does not appear on its face to create a mandatory entitlement * * * the Maine Supreme Judicial Court in *Roy I* held that Roy had the right to a renewed license. *387 A.2d at 237*. The judgment in *Roy I* would seem to have conferred a property interest in the license. See *Logan v. Zimmerman Brush Co., 455 U.S. 422, 401, 102 S.Ct. 1148, 1155, 71 L.Ed. 2d 265 (1982)* ("The hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except 'for cause'")

*Roy v. City of Augusta, Maine, et al. 712 F2d at 1522.*

Rhode Island's Supreme Court has also recognized a property interest in the Class B Liquor License. In *Samuels Realty, Inc. v. McCarthy* 512 A.2d 872 (1986) the Court held as follows:

> Here in Rhode Island the Legislature has specifically authorized municipal licensing authorities to permit the use of a liquor license at a location within the municipality other than that stated on the license as well as authorizing the transfer of a license "to another person." General Laws 1956 (1976 Reenactment) § 3-5-19, as amended by P.L.1977, ch. 216, § 1. Notice of the pendency of any application for such a transfer must be given in the same manner as required for the issuance of an original license.
>
> The plight of Samuel's is similar to that of the lessor in O'Neill v. Keegan, 376 Pa. 606, 103 A.2d 909 (1954), who had transferred his liquor license to a lessee with a stipulation that the license would not be renewed or transferred from the premises during the term of the lease. When the lease expired, the lessee refused to retransfer the license. In determining whether the license was the subject of an absolute sale or merely a temporary transfer running with the life of the lease, the Pennsylvania Supreme Court alluded to the following factors that are pertinent to McCarthy's 1978 lease: The lessee had paid no consideration for the liquor license, a very valuable property; if an absolute sale of the license had been intended, why was there a provision barring a transfer of the lease without the lessor's consent during the lease's five-year term; reacquiring a restaurant-bar without a liquor license is akin to owning a ship that is permanently affixed to dry land; and no lessor would consciously and willingly enter into a plan that amounts to a guarantee of future economic disaster. 376 Pa. at 609-10, 103 A.2d at 911.

Samuels Realty, Inc. v. Macarthy 512 A.2d 872,874 (1986)

It has also been held that a state-issued license for continued pursuit of a licensee's livelihood, renewable periodically upon payment of a fee and revocable only for cause creates a property interest in the licensee which is protected by the Fourteenth Amendment. *Richardson v. Town of Eastover* 922 F.2d 1152 (Cir. 4, 1991).

Defendants are incorrect in their assertion that passage of the "expiration" date without renewal by the licensee rendered the license null and void. The Rhode Island case on point is *Beacon Restaurant v. Adamo* 103 RI 698, 704, 241 A.2d 291 (1968) wherein the Rhode Island Supreme Court was confronted with a situation where a local board had allowed the transfer of an existing license to another party upon the assumption that the license had "expired" pursuant to General Laws § 3-5-8. The Court held as follows:

> We find no merit in the council's argument that this controversy is moot because the transfer application concerned itself with a license which expired on December 1, 1966, and the license for the year commencing December 2, 1966, was issued to Sunny Day and no appeal therefrom was taken by Beacon. This argument is based in part on Sec. 3-5-8 which states "Every license except retailer's class F licenses and retailer's class G licenses shall expire on December 1 next after its issuance."
>
> This Court rejected a similar argument in *Tedford v. Reynolds* 87 RI 335, 141 A.2d 264. We pointed out in *Tedford* that the adoption of such a view would unjustly deny an applicant for a license his right to have his case reviewed by the liquor control administrator in accordance with the provisions of Sec. 3-7-21. A liquor license under Rhode Island law is something more than a mere privilege which expires automatically on December 2 of each year. Recently, in *Vittorio v. Sportsmen's Lodge and Restaurant, Inc.*, 228 A.2d 119, it was shown that a properly issued liquor license, while it may not be property in the strict sense, has some of the aspects of a property right. The legislature has recognized this quality by providing in Sec. 3-7-6, as amended that a holder of a class A, B, or C license who applies prior to November 15 of the year in which his license expires is prima facie entitled to a renewal thereof.

*Beacon Restaurant v. Adamo* 103 RI 698, 704, 241 A.2d 291 (1968)

**B. The defendants violated the plaintiffs' right to Due Process by failing to consider the effect revocation of this license would have on plaintiffs' security interest therein.**

Plaintiffs were not the license holders at the time of the revocation. They have spent the past four years of litigation in the state courts effectively "shackled" to the interests of Jake & Ella's Corp. with no recognition of the valuable interest they seek to vindicate in this action "as secured creditors." According to Rhode Island law as interpreted by the Superior Court Justice hearing the appeal they had no standing in their own right to pursue the appeal. *Jake & Ella's, Inc. v. Department of Business Regulation, Parties' Joint Exhibit #7.* Indeed, it was only upon the fortuity of the existence of an executed Power of Attorney from Jake& Ella's and its principals, that the Plaintiff's were able to gain access to the Department of Business Regulation and the Superior Court. Nevertheless, they were not allowed to argue their own entitlement to the return of the license by right of their security interest, nor their own lack of culpability in the events that gave rise to the action by the Board of License Commissioners to revoke the license. Rhode Island law is silent on the rights of secured creditors in the matter of liquor licenses. This fact was noted twenty-three years ago by Justice Votolto in *In re Camelot Court, 21 BR 596 (D. RI 1982:)*

> R.I.Gen. Law § 6A-1-104 states that the U.C.C. is a "general act intended as a unified coverage of its subject matter, (and that) no part of it shall be deemed to be impliedly repealed by subsequent legislation if such construction can be reasonably avoided." The comment to this section states that the U.C.C. was integrated and intended as a uniform codification of permanent character covering an entire field of law, and "is to be regarded as particularly resistant to implied repeal." See. R.I. Gen. Law § 6A-1-104 comment (1960). The Rhode Island liquor control statutes, on the other hand do not specifically regulate the creation, construction or validity of security interests in liquor licenses and there is no legislative history or case law which construes the application of such statutes in the manner suggested by the Trustee.
>
> Because of the expressed legislative intent to preserve the integrity of the U.C.C. from implicit repeal, and the absence of language which specifically impinges on a licensee's right to grant a security interest in a liquor license, this Court concludes

> that the U.C.C. is controlling, and that a Rhode Island liquor license may be the subject of a valid security interest notwithstanding R.I. Gen. Law § 3-5-29.

*In re Camelot Court, 21 BR 596, at 598.*

This obvious shortfall in the Rhode Island liquor licensing law, *i.e.*, the utter lack of *any* remedy for these secured creditors[1] is an important element of their claims under § 1983.

As the Rhode Island Supreme Court held in *LaRay Realty v. Town Council of the Town of Cumberland* 698 A.2d. 202:

> In *Monroe v. Pape 365 U.S.167, 173, 81 S.Ct 473, 477, 5 L. 2d. 292, 498 (1961,) (overruled in part not* relevant here *by Monell v. Department of Social Servces of New York, 436 U.S. 658, 98 S.Ct 2018, 56 L.Ed.2d. 611 (1978)),* the United States Supreme Court explained that 42 U.S.C. § 1983 was intended to provide a remedy for civil rights violations "where state law was inadequate." We are of the opinion that because the statutory limitation on damages under the Governmental Tort Liability Act clearly rendered inadequate the post-deprivation relief available to remedy the due process violations in this case, plaintiffs may recover the full amount of their damages under 42 U.S.C. § 1983 *La Ray*, supra. at 213.

How much more appropriate is that remedy when the state law is not merely inadequate, but non-existant?

In *Albright v. Oliver 510 U.S. 266, 114 S.Ct. 807. 127 L.Ed.2d 114 (1994.)*

Justice Scalia, in his concurring opinion, joined by Justice Thomas observed:

> * * * (I)f the state did not provide a tort remedy for malicious prosecution, there would be force to the argument that the malicious initiation of a baseless criminal prosecution infringes an interest protected by the Due Process Clause and enforceable under §1983.

*Albright v. Oliver 510 U.S, 283.*

---

[1] An example of such a regulatory scheme can be found in Florida Statutes Annotated, Title XXXIV, Alcoholic Beverages and Tobacco (Chapters 561-569) That statute allows a secured creditor a right to enforcement of its lien "within 180 days after any order of revocation or suspension by an administrative officer or department of the government for a cause or causes of which the lienholder did not have knowledge or in which he or she did not participate."

*Ubi jus, ibi remedium.* This maxim of the common law has been codified both in the Federal and State Constitutions. Where there is a right, there is a remedy. Having demonstrated the property "right" to protection, the only remedy available is from this Honorable Court. The complaint for the enforcement of this right is actionable under §1983.

**C. Are the Commissioners on the Newport Board of Licensing entitled to quasi-judicial immunity, and what immunity, if any, does the municipality itself have against these claims?**

The individual defendants should not be allowed to claim immunity in this instance. At all times relevant hereto the defendants knew or reasonably should have known that the action of revoking this license would violate the plaintiffs' constitutional rights and would serve to deprive them unfairly of a valuable interest therein. In *Perez v. Rodriguez Bou, 575 F.2d 21 (1st Cir. 1978)* the Court rejected the defendant's claim of qualified immunity, citing *Wood v. Strickland 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed. 2d., 214 (1975):*

> The *Wood v. Strickland* test involves both an objective and subjective component. Subjective good faith in one's conduct is not sufficient to protect an official from civil rights liability. See *Schiff v. Williams, 519 F.2d 257, 261 (5th Cir. 1975)*, Courts must also evaluate whether an official reasonably should have known that his actions would violate plaintiff's rights. See *Procunier v, Navarette, ___ U.S.____, 98 S.Ct. 855, 55 L.Ed. 24 (1978).*

*Perez v. Rodriguez Bou, 575 F.2d, 23*

At the revocation hearing on January 10, 2001 Chairman Sardella heard argument from Plaintiff's counsel, Mr.Manning, to the end that the Board of License Commissioners would be punishing the wrong people insofar as the plaintiffs' intended to take the license back in accordance with the parties agreement. Chairman Sardella responded:

"The person who's assigned that back should have thought about that before he transferred the license * * * I have no pity for him." *Transcript of Hearing, Exhibit 4, pp. 8-*

*9*. Such a comment was at worst malicious and in the very least ill-informed and irrational. The Plaintiffs were effectively held responsible for the actions of the license holders. The individual defendants acting in their capacities as commissioners betrayed a callous indifference to the Plainitffs, and ignored the obvious harm they would suffer upon the revocation of this license.

Of course, the City of Newport has no immunity, of any kind. The decision of the Supreme Court *in Owen v. City of Independence, Missouri, et al 445 U.S. 622, 100 S. Ct. 1398, 63 L.Ed. 673 (1980)* is instructive. In that case a former police chief alleged that he was discharged in violation of his substantive and procedural due process rights. The Eight Circuit Court of Appeals found that the city officials and officers enjoyed "qualified immunity" owing to their having acted "in good faith" and without malice. The Supreme Court granted certiorari and Justice Brennan gave the Opinion of the Court:

> *Monell v New York City Dept. of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 611 (1978)* overruled *Monroe v. Pape, 365 U.S. 167, 81 S.Ct., 473, 5 L.Ed.2d 492 (1961,)* insofar as *Monroe* held that local governments were not among the "persons" to whom 42 U.S.C. § 1983 applies and were therefore wholly immune from suit under the statute. *Monell* reserved decision, however, on the question of whether local governments, although not entitled to an absolute immunity, should be afforded some form of official immunity in § 1983 suits. * * * we granted *certiorari.*

*Owens, 622 U.S. at 624.* Justice Brennan goes on in detail to recount the development of the immunity doctrine from colonial times and then states:

> How 'uniquely remiss" it would be * * * if the government itself – "the social organ to which all our society looks for the promotion of liberty, justice, fair and equal treatment, and the setting of worthy norms and goals for social conduct" – were permitted to disavow liability for the injury it has begotten. (cite omitted) A damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees, and the importance of assuring its efficacy is only accentuated when the wrongoer is the institution that has been established to protect the very rights it has transgressed. Yet. owing to the

qualified immunity enjoyed by most governmental officials (cite omitted) many victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good faith defense.

*Owen, supra at 651*

The Court went on to observe that § 1983 was intended not only to provide compensation for the victims of past abuses, but to serve as a deterrent against future constitutional violations as well, and that the expense is best borne by society rather than by the individual against whom the transgression occurred. Accordingly, defendants' claims of immunity must fail in this instance.

**D. Did the "retirement" of this license upon its supposed expiration constitute an unlawful taking of the Plaintiffs' property. Is it a separate and distinct violation of their rights to Procedural and Substantive Due Process, and does it constitute and unlawful taking of their property without just compensation?**

Unlike "old soldiers," valuable interests in liquor licenses don't "just fade away." The "retirement" of this license by the defendants, acting as the Newport City Council, was no ordinary piece of legislation; it was designed specifically to end the Plaintiffs' tireless quest for its return. As such this ordinance is suspect.

There is no question that this legislation was aimed at the license here in dispute:

ATTORNEY OLNAYAK: So, perhaps you could correct me if my assumption is wrong, but presently there are how many licenses?

CHAIRMAN SARDELLA: Presently there are fifty-nine.

ATTORNEY OLNAYAK: Fifty-nine

CHAIRMAN SARDELLA: And one has not been renewed and we are retiring it to fifty-eight.

*Transcript of City Council Meeting, 1/8/03 Exhibit 12*

(I)f a town's action is legislative, an affected party has no right to notice and an opportunity to be heard. Fairness (or due process) in legislation is satisfied when legislation is enacted in accordance with the procedures established in the state constitution and statutes for the enactment of legislation. If legislation effects a taking of property, however, the complaining party may challenge the legislation or file a claim for just compensation. * * * Whether Eastover's enactment barring all nightclub licenses on Main Street is legislative, however, is not altogether clear. While a legislative enactment is one adopted generally for all citizens in a particular classification * * * when a rule adopted for general application applies only to a small number of persons its characterization as legislation becomes suspect.

*Richardson v. Town of Eastover 922 F.2d. 1152, 1158 (4th Cir. 1991)*

The City Council's action was undertaken notwithstanding the correspondence of January 7, 2003, sent both to the City Clerk and to the City Solicitor, in which counsel explained the delay in seeking renewal of the license and indicated that such a request would be forthcoming in a very short time. Counsel also requested notice and an opportunity to be heard should the Board of License Commissioners elect to take further action on the license. See, *Correspondence to the City Council of 1/7/03, Exhibit 11.*

It should also be noted that the City Clerk had earlier forwarded the requested applications - well after the "deadline" for the filing of request for renewal of these licenses had passed.. This reflects the custom throughout the state whereby someone filing late is allowed to proceed; the only "penalty" being the payment of costs for the required advertisement in the newspaper, which is not required when the application is received timely. Then, one ad is placed listing all applicants for renewal at the City's expense.

This ordinance is nothing more than a slap in the faces of the Plaintiffs, and of the Superior Court Justice who reversed the order of revocation. It was "sour grapes," pure and simple.

## CONCLUSION

The Defendants are not entitled to Summary Judgment. Moreover, the Plaintiffs stand on the foregoing arguments in support of their own Motion For Summary Judgment. The

revocation proceeding was undertaken in violation of the Plaintiffs' right to notice and an opportunity to assert their own substantial interest in this valuable license. Where Rhode island appears to have no legislative scheme in place to address these claims, it is nonetheless incumbent upon the local boards and councils to adhere to the United States Constitution and its requirement of due process, and they will be liable for the damages that result to those who, like the Plaintiffs, have been denied these fundamental rights. The Defendants' Motion should be denied and the Plaintiffs' motion granted, with further proceedings to assess the measure of damages.

Respectfully submitted this 16th day of September, 2005

Plaintiffs,
By their Attorneys,

Marty C. Marran Reg. No. 2855
7 Tanglewood Court, Apt. 10
West Warwick, RI 02893
(401) 826-0847

Edward G. Lawson, #0517
260 Lonsdale Avenue
Pawtucket, RI 02860
401 725 1810
401 725 2244 fax

**Certification**

I certify that I mailed a copy of the above motion and attached memorandum to Mark DeSisto, Esq., 211 Angell Street, P.O. Box 2563, Providence, RI 02906 and Joseph Nicholson, Esq., Newport City Hall, 936 Broadway, Newport, RI 02840 on the 16th day of September, 2005.